Belford et al. *v.* Crane et ux.

---

GEORGE BELFORD and others, partners, &c., *vs.* JOSEPH B. CRANE and wife.

1. Where the cause is heard upon bill and answer, the answer must be taken as conclusive proof of the *facts* which it sets up by way of defence. But intentions and motives are not facts, touching which the answer is conclusive.

2. Where a wife takes the title to land, purchased with the property of the husband, under circumstances which render the transaction fraudulent as against the husband's creditors, she will be treated as a trustee for the creditors, and the property will be sold for their benefit.

3. The legal title to land is not affected by a sheriff's deed, where, at the time of the levy and sale, the title was not in the defendant in execution.

4. The existence of fraud is often a presumption of law from admitted or established facts, irrespective of motive, and too strong to be rebutted. A voluntary settlement on the wife by a husband while engaged in business, and involved in debt, is fraudulent as against creditors, no matter how pure the motive which induced it.

5. The right of the husband to the services of his wife, and to the avails of her skill and industry, is absolute. The wife can acquire no separate property in her earnings, though she carry on business in her own name, except by gift from her husband.

6. A settlement by the husband upon the wife, in consideration of meritorious services, is a pure gift or voluntary settlement, and though good as against the husband, can only be sustained against his creditors by virtue of an antenuptial contract.

7. If a party is indebted at the time of a voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstances will permit those debts to be affected by the settlement, or repel the legal presumption of fraud.

8. The distinction between *existing* and *subsequent* debts, in reference to voluntary conveyances, is, that as to the former, fraud is an inference of law : as to the latter, there must be proof of fraud in fact.

9. The act of 1852, for the better securing the property of married

women, confers upon the wife a mere *jus tenendi*.  It gives her no power to *dispose* of her property.

10. The land having been purchased with the money of the husband, there is a resulting trust in his favor.  The wife will be declared a trustee for the husband, for the benefit of his creditors.

*Vanatta*, for complainants.

*Pitney*, for defendants.

Cases cited by complainants counsel.  *Reade* v. *Livingston*, 3 *Johns. Ch. R.* 497; *Cook* v. *Johnson*, 1 *Beas.* 52; *Satterthwaite* v. *Emley*, 3 *Green's Ch. R.* 489; *Townsend* v. *Westacott*, 2 *Beavan* 340; 1 *Story's Eq. Jur.*, § 353, § 374; 1 *Fonb. Eq.*, ch. 4, § 12; 3 *Stark. on Ev.* 615, 622; *Turnor's case,* 8 *Coke* 132, (262); *Bovy's case,* 1 *Vent.* 194; *Douglasse* v. *Waad*, 1 *Chan. Cases* 100; *Holford* v. *Holford, Ibid.* 217; *Colvile* v. *Parker, Cro. James* 158; *Evelyn* v. *Templar*, 2 *Bro. Ch. R.* 148; *Burrel's case*, 6 *Coke* 72; *Gooch's case*, 5 *Coke* 60; *Doe* v. *Routledge, Cowper* 705, 711; *Townsend* v. *Windham*, 2 *Vesey, sen.* 11; *Nix. Dig.* 762, § 8; *Freeman* v. *Orser*, 5 *Duer* 476.

Cases cited by defendants counsel.  *Megrath* v. *Robertson's Adm'rs*, 1 *Dess.* 445; *Pinney* v. *Fellows*, 15 *Vt.* 525; 1 *Bright on Husb. and Wife*, 230, 232.

THE CHANCELLOR.  The complainants having recovered judgment at law against Joseph B. Crane, caused an execution to be levied on certain real estate, the legal title to which was in the wife of Crane.  On the twenty-fourth of June, 1861, the land was sold by virtue of the execution, and the complainants became the purchasers, and received a deed from the sheriff in pursuance of the sale.  The bill charges that the property was in fact, the property of the husband, but that the title was vested in the wife, for the purpose of defrauding the husband's creditors.  The prayer of the bill

is, that the deed to the wife be declared void, and that she be decreed to convey her title to the complainants, or that the property be sold under the order of the court, to satisfy the claim of the complainants against the husband.

The case is heard upon bill and answer, and the right rests upon the admissions and allegations of the answer, which must be taken as conclusive proof of the *facts* which it sets up by way of defence. *Lube's Eq. Pl.*, 109.

The answer admits the judgment of the complainants; the levy upon the real estate standing in the name of the wife, and the sale and conveyance to the complainants. It also admits that at the time of the marriage of the defendants, the wife was not possessed of any property, real or personal, and that she has not received, by descent, devise, or gift, from any person since her marriage, any property whatever. It avers that the wife was a tailoress, and that, by her labor and exertions as a tailoress, in addition to her ordinary household duties, and by keeping boarders, during a course of years, she earned a large sum of money, amounting, as the defendants believe, to about one thousand dollars; that the real estate in question was purchased in the years 1857 and 1858, and the title taken in the name of the wife. That at the time of the purchase, the defendant, Joseph B. Crane, was indebted upon his mortgages and notes given for the purchase of real estate, for his current coal bills, bought on the usual credit for the purposes of his business, and for his family expenses; and that all the debts then due, except about $275, have been paid and satisfied, as the same matured. The defendants admit that when the land was purchased the husband expected to continue in business, but deny that he intended to contract any new indebtedness, except in the ordinary course of his business. They also deny that the title was taken in the name of the wife to hinder and delay creditors, or with any expectation of insolvency. In the fall of 1858 and in the spring of 1859, a house was erected upon the land at a cost of $1700, of which $700 was paid and $1000 raised by mortgage upon the property. In the year

1859, the business of the husband having been much enlarged, proved disastrous, and he was unable to meet his engagements and became insolvent. In 1860, a judgment having been recovered against him, the land which had been conveyed to the wife was levied upon and sold as the property of the husband, and was struck off and conveyed to the attorney of the plaintiffs in execution for the sum of $5. On the ninth of October, 1860, the land was again conveyed to the wife for the consideration of $400, the husband having negotiated the purchase in behalf of the wife. Three hundred dollars of the purchase money was raised by a mortgage on the premises, and the balance was paid out of the funds of a third party, in the hands of the wife, and was also afterwards secured by mortgage on the property.

The fact that the legal title to the land was never in the husband cannot affect the substantial question at issue, though it may affect the mode of redress. If the property, vested in the wife, was purchased with the property of the husband, under circumstances which render the transaction fraudulent as against the husband's creditors, the wife will be treated as a trustee for the creditors, and the property sold for their benefit.

Nor can the question at issue be materially affected by the sale of the property under execution against the husband, and its subsequent conveyance to the wife. She paid not one dollar consideration for the reconveyance to herself, out of any funds of her own. The entire consideration was raised by mortgage upon the premises, leaving both the legal and the equitable title unaffected, save that the property was charged with an additional encumbrance. The wife acquired no legal title whatever under the deed from the sheriff's grantee. The legal title, at the time of the levy and sale by the sheriff, was not, and never had been in the defendant in execution. The sheriff's deed, therefore, could not affect the legal title. All that it could effect, and probably all that it was designed to effect, was to lay the foundation for proceeding in equity.

The whole controversy turns upon the validity of the transfer of the property from the husband to the wife. The case, as it appears from the answer of the defendants, is, that about the year 1856, Joseph B. Crane, the husband, being a man of limited means, embarked in the business of buying and selling coal. A considerable portion of his property was in real estate, and he resorted to loans for the purpose of carrying on his business. The wife, at the time of her marriage, had no property whatever. She has never since received any by descent, devise, or bequest. All the property since vested in her, has been purchased with means which belonged to her husband. When he commenced business, the whole real estate of the husband was in his own name. Soon afterwards, while his real estate was subject to mortgage and he was carrying on business upon borrowed capital, the real estate owned by the husband was sold, and the land in question was purchased and the title taken in the name of his wife. The land was purchased in the years 1857 and 1858, at a cost of $750. In the fall of 1858 and in the spring of 1859, a house was erected upon the premises at a cost of $1700, making the total cost of the property $2450. So far as can be learned from the answer, that exceeded the whole amount of property ever owned by the husband, clear of debts. The answer does not show that he ever, while in business, was possessed of $2000, clear estate. In the summer of 1858, about the time he commenced building, he sustained a serious loss, and in the fall of 1859, within six months after his house was finished, he was unable to pay his debts, and, in the language of the answer, "went to protest." Thereupon the business was carried on in the name of the wife, the coal being purchased by a third party, and the husband, as the agent of the wife, retailing the coal and accounting for the proceeds to the purchaser, or applying it in payment of the notes. In the spring of 1856, when the husband commenced business, he had been married fifteen years. There was no antenuptial or postnuptial settlement, or agreement for settlement on the wife. The whole property stood in the name

z *

of the husband.   In 1857 he commenced the transfer of his property to his wife, and by the spring of 1859, while the husband was still engaged in business and extending his operations, every vestige of property that he owned was in the name of his wife.   The transfer was not made by a deed of settlement.   There was no declaration of a purpose by the husband to appropriate a specific portion of his property for the use of the wife, but the property, from time to time, was purchased in the name of the wife, and a house subsequently erected thereon with the means of the husband.   That property the husband continued to use and enjoy after the change of title as fully as he had done before.   The only substantial change was, that it was placed beyond the reach of his creditors.   It is very difficult, on a simple view of the facts presented by the answer, to resist the impression that this whole arrangement was made for the purpose of placing the property of the husband beyond the reach of the husband's creditors.   It is true the answer denies the fraudulent intent or motive, but intentions and motives are not *facts*, touching which the answer is conclusive.   *Cook* v. *Johnson*, 1 *Beas*. 53.

The existence of fraud is often a presumption of law from admitted or established facts, irrespective of motive, and too strong to be rebutted.   A voluntary settlement on the wife by a husband while engaged in business and involved in debt, is fraudulent as against creditors, no matter how pure the motive which induced it.

It is urged that the transfer of the property to the wife will be sustained in equity, because it was purchased in part with the avails of the wife's labor.   Both at common law and in equity, the husband is entitled not only to the personal property which the wife owns at the time of her marriage, but to all that she acquires by her skill or labor during coverture.   His right to her services and to the avails of her skill and industry, is absolute.   The wife can acquire no separate property in her earnings, except by gift from her husband.   Even where she carries on business in her own name,

the avails of the business are the property of the husband. This subject was considered and decided in *Skillman* v. *Skillman*, 2 *Beas.* 403, where many of the authorities will be found. That decision has since been affirmed by the Court of Appeals.

The answer contains no averment of a settlement of the husband on the wife in consideration of her meritorious services, or of a gift to her of the avails of her labor. The defendants, on the contrary, admit that no part of the money invested in said house and lots was furnished by the wife, but they allege that it was the proceeds of the joint labor of the defendants in former years, and from the increase in value of the real estate purchased by the proceeds of such joint labor. They further allege that no account was kept of the earnings of the wife, nor were they kept separately, but they were united with the earnings of the husband, and the surplus, after defraying the expenses of the family, were laid up and invested by the husband. These facts prove incontrovertibly that the land was purchased with the property of the husband, and the title taken in the name of the wife. There is no allegation that the conveyance was designed as a postnuptial settlement upon the wife, or as a gift to her for her services. The frame of the answer excludes such an inference. The wife claims the property, not as the gift of her husband, but as an equitable recompense for meritorious services.

But if the answer had alleged a settlement by the husband in consideration of those services, it was a pure gift or voluntary settlement, and though good as against the husband, could only be sustained against the creditors by virtue of an antenuptial contract. *Clancy on Husb. and Wife* 276, 277.

In regard to antecedent creditors, there seems no room for question as to the invalidity of the title. The doctrine, as stated by Chancellor Kent and adopted by this court, is, that " if the party is indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts, and no circumstances will permit those debts to be affected

by the settlement, or repel the legal presumption of fraud." *Reade* v. *Livingston*, 3 *Johns. Ch. R.* 500; *Cook* v. *Johnson*, 1 *Beas.* 54.

The distinction between existing and subsequent debts, in reference to voluntary conveyances, is, that as to the former, fraud is an inference of law; but as to subsequent debts, there is no such necessary legal presumption, and there must be proof of fraud in fact. *Reade* v. *Livingston*, 3 *Johns. Ch. R.* 497, 502; *Cook* v. *Johnson*, 1 *Beas.* 54.

I think the facts of this case, as disclosed by the answer, leave no reasonable room for doubt that the vesting of the property in the wife was effected in contemplation of present and future indebtedness, and with the view to hinder, delay, and defraud creditors.

Independent of all other badges of fraud, the large amount settled on the wife, considered in relation to the husband's means, is in itself a very unusual and suspicious circumstance. A settlement honestly made always has relation to the husband's pecuniary ability. In *Beard* v. *Beard*, 3 *Atk.* 72, Lord Hardwicke said: "A court of equity will not suffer the wife to have the whole of the husband's estate while he is living, for it is not in the nature of a provision, which is all the wife is entitled to."

Courts have manifested a strong disposition, and very properly, to protect *bona fide* settlements made by a husband in favor of a wife. But it is material to bear in mind that here is no settlement by the husband for the separate use of the wife. The absolute interest in and control over the property, to the entire exclusion of the husband, is not vested in the wife, as it would be in case of a conveyance to trustees for her use. Independent of the statute of 1852, for the better securing the property of married women, the husband would have a right to the income of the property during the life of the wife, and on her death he would become tenant by the curtesy. And notwithstanding the statute, the wife has no power to dispose of her property. The statute confers on her merely the *jus tenendi*. She can neither alien nor de-

vise it. She holds it really for the benefit of her husband during his life, and for his children upon her death. He cannot be ejected by the wife. In the language of Mr. Justice Vredenburgh, "he is entitled to live in her house and to eat at her table." Upon her death he becomes the owner of the property for life, as tenant by the curtesy. *Naylor* v. *Field, 5 Dutcher* 287 ; *Johnson* v. *Cummins, February T.*, 1863. He has, for all practical purposes, as full enjoyment of the property for his life, as he would have if the legal title were in himself, save only that he cannot alien or encumber it. The essential difference is, that while the title is in the wife it is beyond the reach of the husband's creditors. Such a transaction is in itself calculated to awaken suspicion and challenge investigation. It affords an easy and convenient cloak for fraud, with little inconvenience to the husband, while the title remains in the wife, and equal facility for restoring the title to the husband the moment the claims of creditors are compromised. It furnishes no adequate protection to the rights of the wife against the unscrupulous importunities of the husband. Such a transaction has, in my judgment, but little claim to the favorable consideration of a court of equity.

The complainant is entitled to relief. The land having been purchased with the money of the husband, there is a resulting trust in his favor. The wife will be declared a trustee for the husband, for the benefit of the creditors. The precise form of relief will be best settled when the defendants, who hold encumbrances created by the wife, shall have been heard. As at present advised, I think the proper mode of relief would be to direct the property to be sold, and the proceeds applied, after satisfying encumbrances, to the payment of the complainants' claim.

No actual fraud is imputed to the wife. Her interest in the property, as against the husband's creditors, will be secured to her to the extent of the value of her dower, in case the title had been vested in the husband, subject, however, to encumbrances created voluntarily by herself.